IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF TENNESSEE
KNOXVILLE DIVISION

| | |
|---|---|
| JIMMIE D. ROSS and<br>PAMELA A. ROSS,<br><br>           Plaintiffs,<br><br>v.<br><br>CHASE BANK,<br>AMBROSE, WILSON, GRIMM & DURAND,<br>CHRISTOPHER W. CONNER,<br>TELFORD E. FORGETY, JR.,<br>R-MAC DEVELOPMENT, LLC, and<br>MARTIN I. RAVIN,<br><br>           Defendants. | No. 3:05-CV-075 |

## **MEMORANDUM OPINION**

Presently before the court are motions to dismiss filed by: (1) R-Mac Development, L.L.C. ("R-Mac") and Martin I. Ravin ("Ravin") [doc. 11]; (2) Christopher W. Conner ("Conner") and Ambrose, Wilson, Grimm & Durand ("AWGD") [doc. 25]; and (3) Chase Bank ("Chase") [doc. 29].[1] Plaintiffs have responded [doc. 20] to the motion of defendants Ravin and R-Mac, characterizing the document as a "frivolous demurrer . . . [and] an absolutely glowing example of why there is a nationwide outcry for court reform . . .

---

[1] The sixth named defendant, Telford E. Forgety, Jr. ("Forgety"), was dismissed from this litigation by order dated March 28, 2005 [doc. 27]. Defendant Forgety is a Sevier County, Tennessee Chancellor.

[which] insults the integrity of this court by expecting that this court is an outlaw court[.]" Plaintiffs have also responded [doc. 32] to the motion of Conner and AWGD, similarly attacking that filing as a "frivolous demurrer" lacking substance or support.

The court disagrees with plaintiffs' characterizations and, to the contrary, finds each motion to be well-taken. Accordingly, for the reasons stated herein, the motions will be granted and this civil action will be dismissed.

I.

*Factual Background*

Plaintiffs filed their complaint *pro se* on February 4, 2005, alleging violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO") relating to defendants' purported "debt collection fraud racket." Specifically, defendants are accused of "fraudulently claim[ing]" that plaintiffs are indebted to defendants Chase and/or R-Mac. Plaintiffs describe the purported debt as "worthless commercial paper," a non-transferable credit card contract, a "fraudulent security instrument," an "alleged client account," and a "falsely created . . . Sworn Account." The core issue of plaintiffs' RICO case is therefore their contention that the R-Mac/Chase debt is invalid.

According to the complaint, defendants' purported "wide-spread, far-reaching scam" culminated on January 13, 2005, when defendants Conner and Forgety "prepared and submitted a false document, committing felony crimes of fraud, extortion and mail fraud[.]" The complaint does not further identify defendant Forgety's January 13, 2005 "false

2

document." However, in their response to Chancellor Forgety's motion to dismiss, plaintiffs identify the "patently fraudulent paper . . . [as] an attempt to obtain $22,722.00 by false pretenses . . . [when] Forgety, Jr. co-joined Conner and Ravin in fraud by rendering a patently false and fraudulent summary judgment against Jimmie D. Ross and Pamela A. Ross" [doc. 21].[2]

Defendant Chase asks the court to incorporate and consider the Chancery Court record attached to Forgety's motion to dismiss [docs. 12, 18]. That record evidences a January 13, 2005 order entered by Forgety granting summary judgment, by apparent default, in favor of R-Mac against the plaintiffs in the amount of $22,722.00.[3]

## II.

*Analysis*

Defendants move for dismissal, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for failure to state a claim upon which relief can be granted. At this stage of the proceedings, the court must construe all well-pled allegations of the complaint as true. *Hahn v. Star Bank*, 190 F.3d 708, 718 (6th Cir. 1999). Pleadings by *pro se* litigants are entitled to a particularly liberal construction. *Id*. at 715. "This less stringent standard, however, does not mean that *pro se* plaintiffs are entitled to take every case to trial" on the

---

[2] Similarly, plaintiffs' complaint describes the disputed debt as "a sum in excess of twenty-two thousand dollars."

[3] There is no indication that plaintiffs defended against R-Mac's Chancery Court complaint or that they appealed Chancellor Forgety's order.

3

basis of futile claims. *Id.*

If the court considers "matters outside the pleading" in resolving a Rule 12(b)(6) motion, the motion is generally then converted to one for summary judgment under Rule 56. *See* Fed. R. Civ. P. 12(b). This has the effect of placing the burden upon the movant to demonstrate that there is no genuine issue of disputed material fact. *See* Fed. R. Civ. P. 56(c).

There are exceptions to this general rule. Documents attached to a motion to dismiss are considered part of the pleadings if they are: (1) central to a plaintiff's claim; and (2) referred to in the plaintiff's complaint. *Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 89 (6th Cir. 1997). Although the present complaint does not identify Conner and Forgety's January 13, 2005 "false document," it is apparent from the record that the Chancellor's $22,722.00 judgment order relates to the same "sum in excess of twenty-two thousand dollars" referred to in plaintiffs' complaint (and the same "attempt to obtain $22,722.00 by false pretenses" referenced in plaintiffs' response to Chancellor Forgety's motion to dismiss). Because they are referenced in, and central to, plaintiffs' claim, the court can accordingly consider the Chancery Court record and order in resolving defendants' motions under Rule 12(b)(6).[4]

---

[4] In the alternative, the court could consider the Chancery Court documents under the "public records" exception. *See Nieman v. NLO, Inc.*, 108 F.3d 1546, 1554 (6th Cir. 1997). Further, even if the court were to instead treat the motions as ones for summary judgment, the result would be the same. Plaintiffs point out - and the court sees - absolutely no genuine issue of material fact in this case, and the court concludes that the moving parties are entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

4

Having considered the Chancery Court's record, plaintiffs' present complaint must be dismissed under the doctrine of collateral estoppel, which bars a second suit between the same parties or their privies as to issues which were actually litigated and determined in a former suit, and which were necessary to the judgment in that suit. *See Massengill v. Scott*, 738 S.W.2d 629, 632 (Tenn. 1987) (citation omitted). In determining the preclusive effect of the underlying Chancery Court judgment, this court must first look to Tennessee state preclusion law. *See Marrese v. American Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 381, 105 S. Ct. 1327, 1332, 84 L. Ed. 2d 274 (1985). If Tennessee courts would accord the judgment preclusive effect, then this court must do likewise unless Congress has expressly or impliedly created an applicable exception to this general rule. *Marrese*, 470 U.S. at 381, 386, 105 S. Ct. at 1332, 1335; *Bay Area Factors v. Calvert (In re Calvert)*, 105 F.3d 315, 317 (6th Cir. 1997).[5]

As noted above, Tennessee courts apply the doctrine of collateral estoppel to issues which were actually litigated and determined in a former suit between the same parties or their privies if the issues were necessary to the judgment in that suit. *Massengill*, 738 S.W.2d at 632. The underlying Chancery Court litigation was a suit between the same parties now before this court (R-Mac and the present plaintiffs).

At the core of each suit is the issue of the validity of the disputed debt. Although the Chancery Court case culminated in a default judgment, it is apparent that this

---

[5] The court's research reveals no such exception pertaining to RICO claims.

issue was well-pleaded, properly raised, and - thus - "actually litigated" in that case. *See Rally Hill Prods. v. Bursack (In re Bursack)*, 65 F.3d 51, 54 (6th Cir. 1995) (citing and quoting *Lawhorn v. Wellford*, 168 S.W.2d 790, 792 (Tenn. 1943)).

> Even a default judgment satisfies Tennessee's "actually litigated" requirement: A judgment taken by default is conclusive by way of estoppel in respect to all such matters and facts as are well pleaded and properly raised . . . and such issues cannot be relitigated in any subsequent action between the parties and their privies.

*Id*. Lastly, the court concludes that resolution of the validity of the $22,722.00 debt was "necessary to the judgment" in Chancery Court, as that litigation resulted in a judgment order in favor of R-Mac on that very debt.

Plaintiffs could have raised their civil RICO issue in state court, *see Tafflin v. Levitt*, 493 U.S. 455, 110 S. Ct. 792, 107 L. Ed. 2d 887 (1990), and could have done so in the Sevier County Chancery Court. *See, e.g., Tennessee ex rel. Pierotti v. 777 N. White Station Road, Memphis, Tenn.*, 937 F. Supp. 1296 (W.D. Tenn. 1996). The Chancery Court ruling, even though it was a true default judgment, collaterally estops plaintiffs from now challenging the validity of R-Mac's claim. *See Calvert*, 105 F.3d at 322 (noting the estoppel effect of a true default judgment where permitted by state law). We "have a system of law which expects, and in fact demands, that individuals sued respond to the suit and which subjects to liability those who do not." *Id*. at 321.

Because plaintiffs are estopped from challenging the purported "fraudulent claim" upon which their RICO complaint is based, defendants' motions to dismiss must be

6

granted. The court need not address the alternative grounds for dismissal raised by defendants. An order consistent with this opinion will be entered.

ENTER:

s/ Leon Jordan
United States District Judge
